

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET
ATLANTA, GEORGIA 30303-8960

JUL 2 6 2007

**RECEIVED**

Colonel Paul L. Grosskruger
District Engineer
Department of the Army
Jacksonville District Corps of Engineers
ATTN: Mindy Hogan
Tampa Regulatory Office
10117 Princess Palm Drive Suite 120
Tampa, FL 33610-8300

JUL 3 0 2007

TAMPA REG.
OFFICE

SUBJ: Mosaic Fertilizer, LLC; Permit Application Number SAJ-1997-4099-IP-MGH

Dear Colonel Grosskruger:

This letter is in response to the Public Notice (PN) dated May 29, 2007, for permit application number SAJ-1997-4099-IP-MGH, submitted by Mosaic Fertilizer, LLC, requesting a 21 year permit to mine phosphate and reclaim land for the South Fort Meade mine located in Hardee County, Florida. The project is located in wetlands associated with the Peace River, Little Charlie Creek, Max Branch, Lake Dale Branch, and Parker Branch in Sections 1, 2, 3, 10, 11, 12, 13, 14, 15, 22, 23, 24, 25, 26, 27, 34, 35, and 36, Township 33 South Range 25 East and Sections 5, 6, 7, 8, 18, 19, 30, and 31, Township 33 South, Range 26 East, Hardee County, Florida.

The 10,885 acre site consists of predominantly agricultural land with 1,785.6 acres of jurisdictional wetlands and 81.0 acres of jurisdictional waters. The jurisdictional wetlands contain 340.7 acres of herbaceous wetlands consisting of freshwater marshes, shrub marsh and wet prairies and 1,443.1 acres of forested wetlands consisting of bay swamps and mixed wetlands. The applicant has proposed that the ore excavated from the Hardee County tract will be hydraulically transported to the existing South Fort Meade beneficiation plant across lands subject to Department of Army (DA) permit number SAJ-1993-450 (Mosaic-South Fort Meade Mine) and sand and clay residuals will be returned hydraulically to the Hardee County tract.

The applicant proposes to impact 511.3 acres of waters of the United States (U.S.), including 260.2 acres of forested wetlands, 204.70 acres of herbaceous wetlands, 46.4 acres of open water or ditches and 54,819 linear feet of stream channels. Stream channel impacts include two crossings of Little Charlie Creek, one crossing of Lake Dale Branch, one crossing of Parker Branch and two crossings at unnamed tributaries in Sections 2 and 24, Township 33 South, Range 25 East. As compensatory mitigation for the proposed project, the applicant proposes to create 797.1 acres of wetlands consisting of 344.6 acres of forested wetlands and 268.8 acres of herbaceous wetlands, 183.7 acres of open water, and 60,000 linear feet of stream channel. The majority of the compensatory mitigation will be located along and adjacent to the Peace River,

Exhibit __A__



Little Charlie Creek, and Parker Branch to create integrated upland and wetland natural system corridors along the principal waterways on the property. The applicant also proposes to place 2,101.9 acres of wetlands and uplands within a conservation easement that will be dedicated to the Florida Department of Environmental Protection.

The Peace River and its watershed is an Environmental Protection Agency (EPA) Region 4 priority watershed. The Peace River is also a tributary to the Charlotte Harbor National Estuary Program, designated by Congress as an estuary of national significance. Headwater wetlands and tributaries to rivers such as the Peace River are important for wildlife and downstream water quality protection. They provide water quality functions, such as removal of sediments, excess nutrients and contaminants, which benefit and support neighboring aquatic ecosystems. Through hydrological connections, these wetlands also contribute plant material and other useable nutrients (both dissolved and particulate organic matter) into aquatic food webs that include recreationally, commercially, and ecologically important species within downstream estuaries. For the above-stated reasons, EPA considers the wetland and riverine resources within and neighboring the proposed project site to be aquatic resources of national importance (ARNI)

EPA, Region 4 has completed its review of this project based on information contained in the PN, supplemental information provided by the Corps, and a site visit conducted on July 16, 2007. Based on the information provided, EPA has determined that the proposed project does not comply with the Clean Water Act's (CWA) 404 (b)(1) Guidelines (Guidelines) and offers the following comments:

EPA regulations at 40 CFR Part 230, Subpart B – Compliance with the Guidelines, § 230.10 states that, "although all requirements in § 230.10 must be met, the compliance evaluation procedures will vary to reflect the seriousness of the potential for adverse impacts on the aquatic ecosystems posed by specific dredged or fill material discharge activities." Given the high functional level of the ecosystems affected by this project, the large acreage of impacts associated with the proposed project, and the potential for significant impacts to the Peace River and downstream estuaries which may result in significant cumulative adverse impacts, EPA requests that this proposal be subject to a rigorous application of the Guidelines.

Under the Guidelines, if a project is not water dependent, there is a presumption that a less environmentally damaging practicable alternative exists. Phosphate mining is not a water dependent activity. For this reason, the applicant must clearly demonstrate that practicable alternatives which would not involve discharge of fill material into special aquatic sites were not available (see 40 CFR § 230.10(a)(3)). The ecological functions and values provided by this parcel, which contains headwater, tributaries and a major stream system, would be difficult to replace if impacts to these resources were not avoided.

The Guidelines also state "no discharge of dredged or fill material shall be permitted which will cause or contribute to significant degradation of waters of the United States" (see 40 CFR §23.10(c)). Findings of significant degradation are based on the factual

2

determinations, evaluations and tests required by various subparts of 40 CFR § 230. In addition to water quality impacts, alterations to headwater tributaries and activities associated with phosphate mining, such as those proposed in this permit, can affect the delivery and timing of freshwater to estuaries. This is critical to the riverine system as well as maintaining healthy estuarine functions. We believe this project may cause or contribute to significant degradation of waters of the U.S.

Additionally, 40 CFR § 230.10(d) states that, "no discharge of dredged or fill material shall be permitted unless appropriate and practicable steps have been taken which will minimize potential adverse impacts of the discharge on the aquatic ecosystem." EPA believes that there may be opportunities for the applicant to further avoid and/or minimize impacts to wetlands and stream channels.

40 CFR § 230.11(g) requires applicants address the cumulative impacts of projects. Phosphate mining and reclamation completely alters large land areas, including all the wetlands and waterbodies in the vicinity, through hydrologic, biologic, geochemical and other environmental alterations. When addressing cumulative impacts, EPA requests that the applicant address the long-term affects of earth moving, changes to regional hydrologic cycles from water use and activities such as creation of numerous lakes and clay settling areas, and provide an assessment of its impacts on the wildlife, wetlands and native habitat along all adjacent parcels of land and downstream waterbodies.

The cumulative and secondary impacts associated with phosphate mining alter significant acreages of wetland habitat, reduce function and cause adverse effects throughout the watershed. These effects include but are not limited to: loss of storm or flood water storage capacity; loss of nutrient assimilation capacity; loss of feeding, breeding, roosting, nesting, and nursery habitat for organisms that support local food web; and increases in production and/or distribution of waste and pollutants. The above listed direct impacts can be expected to result from secondary impacts as specified in 40 CFR § 230.11(h) and should be addressed by the applicant.

In summary, given the high quality and value of the wetlands involved and the size of the proposed wetland impacts, EPA believes that, based on information currently available, the applicant could further avoid/minimize the 511.3 acres of waters of the U.S. proposed to be impacted by this project. Additionally, the applicant has not adequately addressed the secondary and cumulative impacts associated with this project. Once the applicant has further reduced wetland impacts, EPA welcomes the opportunity to discuss compensatory mitigation options for any remaining unavoidable wetland impacts. Based on these observations, EPA finds that this project may have substantial and unacceptable adverse impacts on ARNI, and we recommend denial of the project. This letter follows the field level procedures outlined in the August 1992 Memorandum of Agreement between EPA and the DA, Part IV, paragraph 3(a) regarding Section 404(q) of the CWA.

Thank you for the opportunity to comment on this request for authorization. If you have any questions regarding our comments, please contact Rhonda Evans of the Wetlands Regulatory Section at the letterhead address or by telephone at (404) 562-9369.

Sincerely,

James D. Giattina, Director
Water Management Division

cc: U.S. Fish and Wildlife Service