UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 4
ATLANTA FEDERAL CENTER
61 FORSYTH STREET
ATLANTA, GEORGIA 30303-8960

AUG 2 3 2007

RECEIVED

AUG 2 9 2007

TAMPA REG.
OFFICE

Colonel Paul L. Grosskruger
District Commander
Jacksonville District Corps of Engineers
ATTN: Mindy Hogan
Tampa Regulatory Office
10117 Princess Palm Drive, Suite 120
Tampa, Florida 33610-8300

Re: Mosaic Fertilizer, LLC: Permit Application No. SAJ-1997-4099-IP-MGH

Dear Colonel Grosskruger:

This letter is a follow-up to our July 26, 2007, letter and is sent in accordance with Part IV, 3(b) of the Memorandum of Agreement (MOA) between the U.S. Environmental Protection Agency (EPA) and the Department of the Army (Corps) regarding Section 404(q) of the Clean Water Act (33 U.S.C. 1344 (q)). The Mosaic South Fort Mead phosphate mining project, as described in the May 29, 2007, public notice, requests a 21-year permit to mine phosphate and reclaim land in wetlands associated with the Peace River, Little Charlie Creek, Max Branch, Lake Dale Branch, and Parker Branch in Sections 1, 2, 3, 10, 11, 12, 13, 14, 15, 22, 23, 24, 25, 26, 27, 34, 35, and 36, Township 33 South, Range 25 East and Sections 5, 6, 7, 8, 18, 19, 30, and 31, Township 33 South, Range 26 East, in Hardee County, Florida.

The applicant proposes to impact 511.3 acres of waters of the United States (U.S.), including 260.2 acres of forested wetlands, 204.70 acres of herbaceous wetlands, 46.4 acres of open water or ditches, and 54,819 linear feet of stream channels. Stream channel impacts include two crossings of Little Charlie Creek, one crossing of Lake Dale Branch, one crossing of Parker Branch, and two crossings at unnamed tributaries. Additionally, because of the significant amount of earth excavation, transfer, and by-products, such as clay settling areas associated with phosphate mining, a high potential exists for secondary and cumulative hydrologic effects associated with mining and reclamation activities. As compensatory mitigation for the proposed project, the applicant proposes to create 797.1 acres of wetlands, consisting of 344.6 acres of forested wetlands, 268.8 acres of herbaceous wetlands, 183.7 acres of open water, and 60,000 linear feet of stream channel. The majority of the compensatory mitigation will be located along and adjacent to the Peace River, Little Charlie Creek, and Parker Branch to create integrated upland and wetland corridors along the principal waterways on the property. The applicant also proposes to place 2,101.9 acres of wetlands and uplands in a conservation easement dedicated to the Florida Department of Environmental Protection.

Exhibit __B__

As discussed in our July 26, 2007, letter, EPA considers the Peace River, its tributaries and watershed to be vital to aquatic resources of national importance (ARNI). In that letter, we raised numerous issues concerning the potential for substantial and unacceptable adverse impacts to ARNI. The project will impact the Peace River, its watershed, and several Peace River tributaries. Tributaries and wetlands within this watershed are considered ARNI because of their significance to maintaining the ecological integrity of these large freshwater systems as well as their importance for maintaining the biological health, ecology, and hydrology of downstream estuarine ecosystems. The Peace River watershed supplies drinking water to over 250,000 people in southwest Florida and is largely responsible for maintaining the ecological integrity of the Charlotte Harbor estuarine system. A mining project of this geographic size and ecological magnitude will create significant impacts in the Peace River and the Charlotte Harbor estuarine system and will alter the quantity, quality, and timing of freshwater delivery to these systems.

Additionally, based on the information provided in the public notice, it appears that the applicant has not fully addressed the requirements of the Clean Water Act Section 404(b)(1) Guidelines (Guidelines) for avoidance, minimization, and compensatory mitigation. In particular, EPA has identified the following concerns:

- The applicant has not avoided or minimized wetland impacts in accordance with 40 CFR § 230.10(d). Avoidance of wetlands is important because mitigation in the form of re-creating wetland and tributary systems is rarely able to replace the full range of functions and values of the impacted aquatic resources. EPA requests that the applicant further reduce the wetland impacts associated with this project. In particular, we believe that all wetlands adjacent to and tributaries contributing to the Peace River should be avoided. Additional wetland impact avoidance can prevent the worst impacts to the overall Peace River system.

- EPA requests additional clarification of the direct and indirect effects of earth alterations resulting from mining activities to the regional water budget and proposed assurances regarding availability of high quality water for the downstream systems. In addition, please provide information regarding how the mining operations and land reclamation activities will ensure a high quality surficial aquifer for maintaining natural riverine and wetland ecosystems in this watershed.

- Phosphate mining is not a water dependent activity. In accordance with 40 CFR § 230.10(a)(3)), the applicant must clearly demonstrate that practicable alternatives, which would not involve discharge of fill material into special aquatic sites were not available. Furthermore, in order to clearly demonstrate compliance, the applicant must document its consideration of alternatives to the proposed project and the rationale that led it to choosing the least environmentally damaging practicable alternative.

2

- Information on the cumulative effects analysis should be provided in accordance with 40 CFR § 230.11(g) of the Guidelines. EPA requests that the applicant address the long-term effects of earth moving, and changes to regional hydrologic cycles from water use and activities such as creation of numerous lakes and clay settling areas. Additionally, the applicant should provide an assessment of its impacts on the wildlife, wetlands, and native habitat along all adjacent parcels of land and downstream waterways. A cumulative effects analysis should be provided for the entire Peace River watershed and include an analysis of the overall mining activities that are currently underway and/or planned for this watershed.

- Information on the secondary impacts should be provided in accordance with 40 CFR § 230.11(h) of the Guidelines. EPA requests information on secondary impacts to include:

    o Effects associated with alterations to the upland systems that could result in adverse changes to the availability of water to the adjacent wetlands and waterbodies via surficial aquifers and overland flow;
    o Potential declines in the water table beneath adjacent aquatic ecosystems that the applicant does not propose to disturb;
    o Short-term and long-term effects from the disruption of surface and groundwater cycles;
    o The direct and secondary effects of past and proposed clay settling areas on the basin's surficial aquifer storage capacity and base flow to basin streams and wetlands;
    o Effects on unmined natural communities because of changes in the flow regime; and
    o Potential reduction in water quality downstream of the mine.

Based on the information provided, EPA believes that the applicant has not demonstrated that the project avoids or minimizes impacts to the maximum extent practicable. We also remain concerned that, given the location of this project in the watershed for the Peace River, this project will cause significant degradation of aquatic resources, as defined in 40 CFR § 230.10(c). This degradation could result in adverse effects on the surrounding waters, including loss of aquatic and estuarine habitat, disruption of water-dependant species' life cycles, loss of ecosystem productivity, and reduced water quality and quantity for potable water supplies and the downstream estuaries.

Based on the above observations, EPA has determined that the project, as currently proposed, does not comply with the Guidelines. EPA finds this project will have substantial and unacceptable adverse impacts on ARNI. Therefore, we believe the permit for the project, as currently proposed, is not approvable at this time. This letter follows the field level procedures outlined in the August 1992 Memorandum of Agreement between the EPA and the Department of the Army, Part IV, paragraph 3(b) regarding Section 404(q) of the Clean Water Act.

Thank you for the opportunity to comment on this request for authorization. If you have any questions regarding this letter or our comments, please contact Rhonda Evans of the Wetlands Regulatory Section at (404) 562-9369.

Sincerely,

J. I. Palmer, Jr.
Regional Administrator

cc:   USFWS, Jacksonville
      NMFS, St. Petersburg